**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE THE EXTRADITION OF: | No. 05-6204M-DKD |
| Vitalijus Polikarpovas | **FINDINGS OF FACT AND CONCLUSIONS OF LAW and CERTIFICATION OF EXTRADITABILITY and ORDERS** |
| A Fugitive from The Republic of Lithuania. | |

Vitalijus Polikarpovas was provisionally arrested on or about November 28, 2005, pursuant to a complaint in accordance with 18 U.S.C. § 3184, at the request of the Government of Lithuania pursuant to the Extradition Treaty between the United States and The Republic of Lithuania.  In this matter, the United States acts on behalf of the Lithuanian government.  As set forth in the Complaint, sworn before the undersigned U.S. Magistrate Judge on August 19, 2005, Lithuania seeks extradition pursuant to an arrest warrant issued by Judge Baliukaitytė of the District Court of Panevėžys City, Lithuania upon allegations that the Respondent Vitalijus Polikarpovas violated Article 271, Paragraph 2, of the Criminal Code of the Republic of Lithuania.

Lithuania is required under the treaty to submit a formal extradition request, supported by appropriate documents, to the United States Department of State.  On November 4, 2003, the Charge d'Affaires of the United States in Vilnius, Lithuania certified that the United States had received formal documentation from the Republic of Lithuania requesting extradition from the United States of Vitalijus Polikarpovas for the crime of theft.  Government's Exhibit 1.

On November 29, 2005, Vitalijus Polikarpovas made his first appearance in the District of Arizona and an extradition hearing was set for December 20, 2005.  The hearing was continued pursuant to Respondent's unopposed motion to continue until January 10, 2006, at which time the Court considered the evidence of criminality presented by Lithuania to determine whether it was "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.  Following the extradition hearing the Court directed the parties to submit supplemental briefing and took the matter under advisement.  Based upon the hearing and the subsequently submitted memoranda, the Court finds the fugitive extraditable, and certifies that conclusion to the United States Secretary of State, who will then decide whether to surrender Vitalijus Polikarpovas.

**I.     Elements Necessary for Extradition**

Extradition hearings are often characterized as *sui generis.  See, e.g., Hooker v. Klein,* 573 F.2d 1360, 1369 (9th Cir. 1978) (Judge Chambers concurring).  Despite the unusual nature of the proceedings, there is no mystery to the law of extradition:  it is regulated by a body of well-settled precedent, much of it originating with the Supreme Court.  *Ahmad v. Wigen,* 910 F.2d 1063, 1065 (2nd Cir. 1990).  Although other elements must also be present, the paramount issue of every extradition proceeding is whether there exists probable cause to believe that the fugitive has committed the crimes charged in the requesting country.  The latter determination is the kind that courts make in a preliminary hearing under Rule 5.1, Fed.R.Crim.P.  *Ward v. Rutherford*, 921 F.2d 286 (D.C. Cir. 1990).  The extradition hearing must not be converted into a trial on the merits, and the rules ordinarily applicable in such trials are not used.  The extraditee's opportunities to oppose the request are limited because his defenses will be aired in the requesting country.

To accomplish extradition, the United States on behalf of Lithuania must demonstrate: (1) that the judicial officer is authorized to conduct extradition proceedings; (2) that the court had jurisdiction over the fugitive; (3) that the applicable treaty was in full force and effect; (4) that the crimes for which surrender was requested were covered by the treaties; and (5) that

1   there is probable cause to believe that a crime was committed and that the person before the

2   court committed it. *Ornelas v. Ruiz*, 161 U.S. 502 (1896). *Accord, Bingham v. Bradley*, 241

3   U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. United States*, 729

4   F.2d 624 (9th Cir. 1980).

5            A.  Authority of the judicial officer.

6            Congress has specifically conferred upon United States Magistrate Judges the authority

7   to conduct extradition proceedings where the magistrate judge is authorized to do so by a court

8   of the United States.  18 U.S.C. § 3184.  District of Arizona Criminal Local Rule 57.6(d)(15)

9   provides this specific authority:  "[F]ull-time Magistrate Judges in the District of Arizona shall

10  perform the following duties . . .[c]onduct extradition proceedings in accordance with 18 U.S.C.

11  § 3184."

12           B.  Jurisdiction over the fugitive.

13           This element is satisfied because the Respondent is before the court. *See, In re Pazienza,*

14  619 F.Supp. 611 (S.D.N.Y. 1985).  Respondent is in custody and appears before the Court as

15  the result of the service of the provisional arrest warrant issued by this Court.

16           C.  Treaty in full force and effect.

17           The extradition statute, 18 U.S.C. § 3184, appears to limit extradition to instances in

18  which a treaty is in force between the requesting state and the requested state, and several cases

19  have so held. *See, e.g., Argento v. Horn,* 241 F.2d 258 (6th Cir. 1957).  As part of its proof, the

20  Government has provided a declaration from an attorney in the Office of the Legal Adviser of

21  the Department of State attesting that the treaty is in full force and effect.  Government's Ex. 2,

22  Declaration of Thomas B. Heinemann, pages 1-2 and the attached Treaty.  The Department of

23  State's opinion in this sphere is entitled to deference from the Court. *Galanis v. Pallanck*, 568

24  F.2d 234 (2nd Cir. 1977); *Sayne v. Shipley*, 418 F.2d 679 (5th Cir. 1969), *cert. denied*, 398 U.S.

25  903 (1970).  Moreover, Respondent has not challenged the existence of this element.

26

27

28
                                              - 3 -

1        D.  Treaty Applies to the Crimes Charged.

2        The treaty provides for the return of fugitives charged with or convicted of an

3    extraditable crime in the requesting state.  The crime identified in the Complaint and request for

4    extradition is covered by Article 2 of the Extradition Treaty between the United States and

5    Lithuania.  The documents submitted by Lithuania, the requesting state, have established that

6    the Respondent has been charged with the crime recited in the Complaint.

7        The Supreme Court noted in *Collins v. Loisel*, 259 U.S. 309 (1922) that:

8    
> The law does not require that the name by which the crime is described in the two
> countries shall be the same; nor that the scope of the liability shall be coextensive,

9    
> or, in other respects, the same in the two countries.  It is enough if the *particular
> act* charged is criminal in both jurisdictions.

10   259 U.S. at 312 (emphasis added).  *Accord, Messina v. United States,* 728 F.2d 77 (2nd Cir.

11   1984); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981); *United States v. Stockinger*,

12   269 F.2d 681, 687 (2nd Cir. 1959); *Di Stefano v. Moore*, 46 F.2d 308 (E.D.N.Y.), *aff'd*, 46 F. 2d

13   310 (2nd Cir. 1930), *cert. denied*, 283 U.S. 830 (1931).  A court's analysis of the question of dual

14   criminality is subject to the general requirement that the court "approach challenges to

15   extradition with a view toward finding the offense within the treaty." *McElvy v. Civiletti*, 523

16   F.Supp. 42, 48 (S.D.Fla. 1981); 477 F.2d 333 (5th Cir.), *cert. denied*, 414 U.S. 847 (1973).

17   Statements by the United States Department of State as to interpretation of treaties are to be

18   given great weight by our courts. *Sayne v. Shipley*, 418 F.2d 679, 684 (5th Cir. 1969), *cert.

19   denied*, 398 U.S. 903 (1970); *In re Extradition of D'Amico*, 177 F.Supp. 648, 653 n.7 (S.D.N.Y.

20   1959), *appeal dismissed*, 286 F.2d 320 (2nd Cir.), *cert. denied*, 366 U.S. 963 (1961).  By

21   forwarding the formal documents supporting the extradition request of the Republic of

22   Lithuania, and in express language contained in the certifications provided by the State

23   Department, the United States has determined that the crime described in the Lithuanian arrest

24   warrant complies with the dual criminality requirements of the Treaty.  It is also apparent that

25   the alleged conduct would satisfy the elements of burglary in the third degree, a class four

26   felony under the Criminal Code of the State of Arizona.  A.R.S. § 13-1506(A)(1).  A class four

27   

28               - 4 -

1  felony is punishable in Arizona by imprisonment for a  minimum of one and one half years and

2  a maximum of three years.  A.R.S. § 13-702(A).

3      E.  Competent legal evidence.

4      This is the familiar requirement of probable cause to believe that a crime was committed

5  and that the person before the court committed it.  The standard of proof in extradition

6  proceedings is that of probable cause as defined in federal law. *Sindona v. Grant*, 619 F.2d 167

7  (2nd Cir. 1980).  This means evidence sufficient to cause a person of ordinary prudence and

8  caution to conscientiously entertain a reasonable belief in the guilt of the accused.  *Coleman*

9  *v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973).  The Supreme Court stated in *Collins v.*

10  *Loisel, supra*, that "[t]he function of the committing magistrate is to determine whether there

11  is competent evidence to justify holding the accused to await trial, and not to determine whether

12  evidence is sufficient to justify a conviction." 259 U.S. 309, 316.  The Fourth Circuit explained

13  the court's function in an extradition proceeding in the following terms:

14      The extradition hearing is not designed as a final trial.  The purpose is to inquire
       into the presence of probable cause to believe that there has been a violation of
15      one or more of the criminal laws of the extraditing country, that the alleged
       conduct, if committed in the United States, would have been a violation of our
16      criminal law, and that the extradited individual is the one sought by the foreign
       nation for trial on the charge of violation of its criminal laws.
17

18  *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976).  *See also, Fernandez v. Phillips*, 268 U.S.

19  311, 312 (1925); *United States ex rel. Sakaguchi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir.

20  1975) (magistrate's function is to determine whether there is "any" evidence establishing

21  reasonable or probable cause); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962);

22  *Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 397 U.S. 872

23  (1964).

    **II.      Findings of Fact and Conclusions of Law**

24      The Arrest Warrant (denominated as "Enclosure No 5" attached to Government's Exhibit

25  1) alleges that Vitalijus Polikarpovas violated Paragraph 2 of Article 271 of the Criminal Code

26  of the Republic of Lithuania in that "on 18 July 1999, at about 4.00 p.m. and at about 5.00 p.m.,

27

28                                              - 5 -

by breaking into non-residential premises – the window workshop of UAB 'Runika', which was being equipped, located at Savitiškio str. 10 b, Panevėžys, he secretly stole the property belonging to the company 'Runika' – 10 sacks of the cement 'Vilmesta' and a welding apparatus totally estimated LTL 920."  Based upon the accompanying investigative report which includes interviews with witnesses and the Defendant, Vitalijus Polikarpovas, it is more particularly alleged that Vitalijus Polikarpovas made arrangements to sell bags of cement to two individuals. He then in the company of another individual traveled by taxi twice to Runika, opened a gate to a workshop, escorted the taxi into the workshop  and loaded bags of cement and the welding apparatus into the taxi.  On one of the trips into the workshop Respondent was approached by a worker who inquired about the removal of the cement.  The Respondent answered that the cement belonged to him.  Runika later reported the cement and welding apparatus as stolen.

As set forth in his "Response to Government's Supplemental Memorandum," Vitalijus Polikarpovas challenges his extradition on two grounds.  First, he argues that there is not sufficient evidence in the record to establish probable cause that he is the individual who committed the charged offense.  Second, he argues that there is not sufficient evidence in the record to establish probable cause that a "breaking into" a non-residential premises occurred.

The Court finds that sufficient evidence exists to establish probable cause that the Respondent is the individual sought pursuant to the warrant of arrest.  The August 31, 1999 Order issuing the arrest warrant for Vitalijus Polikarpovas (Enclosure No 5 attached to Government's Exhibit 1) sets forth a birth date of March 23 1972, and a  residential address of Taikos Avenue 82-57, Kaunas City.  Both sets of particulars match the information contained in the passport application submitted for this Court's consideration.  The passport photo submitted to this Court as part of this passport application matches the visage of the Respondent such that, taking these facts together, there is  probable cause to believe that the person named in the extradition request is the individual sought pursuant to the warrant of arrest and is the same individual presently in the custody of this Court and identified as Vitalijus Polikarpovas. The Court Order issuing the arrest warrant further indicates that Vitalijus Polikarpovas pledged

1   not to leave his residence address for a period of a year and a half but that he had not done so

2   because "to the knowledge of the court, the accused Vitalijus Polikarpovas has not been living

3   at the address: Taikos Avenue 82-57, Kaunas."   A subsequent court order issued upon

4   defendant's failure to appear on September 8, 1999, notes that "Vitalijus Polikarpovas does not

5   live at the address indicated in the written pledge of not leaving: Taikos Avenue 82-57, Kaunas

6   city".   There is probable cause to believe that Respondent provided this address to the

7   authorities in the charging jurisdiction – an address which matches the passport application

8   associated with the photograph which matches the Respondent in this Court's custody.   The

9   Court admits there is the possibility that the individual who appeared before the district court

10   of Panevėžys City falsely provided the name and address of a person from Kaunas City and that

11   the Court now has before it the person whose identity was falsely assumed.   The Court believes

12   this possibility is remote and far less than the fair probability that the individual sought pursuant

13   to the arrest warrant is the person presently in the custody of the United States District Court

14   for the District of Arizona.

15        With respect to Respondent's second argument, Respondent challenges the extradition

16   on the basis that there is no evidence submitted upon which the Court can find probable cause

17   to believe that Respondent broke into a non-residential premises.   The relevant statute provides

18   that "[a]ny person . . . who steals the property by breaking into the premises other than

19   residential premises, shall be punished by imprisonment for a term from 2 to 6 years with or

20   without a fine."   Article 271 Theft.   This provision has since been reworded and recodified:

21   "Any person who steals property belonging to another person by breaking into the premises or

22   repository, or guarded grounds . . .   shall be punished by a fine or detention, or restriction of

23   liberty , or imprisonment for a term of up to 5 years."   Article 178 Theft.   Respondent contends

24   that there is no evidence of any "breaking."   Witness statements allege only that Respondent

25   returned to a business premises where he had previously been authorized to remain, that he

26   opened a gate to a work shop, directed a taxi to drive into the work shop where he loaded the

27   taxi with cement bags and a welding apparatus.   Some American cases construe the term

28

- 7 -

1   "breaking" so as to require only the force necessary to open a closed, but unlocked door.

2   *Commonwealth v. Lewis*, 191 N.E.2d 753, 756 (Mass. 1963) ("The opening of a closed but

3   unlocked door or window is a breaking.").   The Court also notes that the many dictionary

4   definitions of "break" include the meaning "to violate" such as the meaning conveyed in the

5   phrase "breaking the law."   The documents submitted indicate that the court of the requesting

6   country found that there is cause to believe that the Respondent's actions violated the applicable

7   statute.  This Court is inclined to offer some deference to the charging court's interpretation for

8   three reasons.  First, that court is in a better position to interpret Lithuanian law.  Second, the

9   alleged conduct would constitute a crime in the United States (*see* A.R.S. § 13-1506(A)).  Third,

10  the Respondent's alleged statement to the inquiring sentry that he was authorized to remove the

11  items from the premises could reasonably be deemed to be an action roughly equivalent to

12  "breaking" the protective security provided by the sentry.  Here it is alleged that Vitalijus

13  Polikarpovas used words rather than a crow-bar to force his way past the protective measures

14  of the non-residential premises.   Moreover, "'[g]enerally, evidence that explains away or

15  completely obliterates probable cause is the only evidence admissible at an extradition hearing,

16  whereas evidence that merely controverts the existence of probable cause, or raises a defense,

17  is not admissible.'"  *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005), *quoting Mainero*

18  *v. Gregg*, 164 F.3d 1199, 1297 n. 7 (9th Cir. 1999).  In light of the foregoing analysis, the Court

19  cannot conclude that Respondent has completely obliterated probable cause.

20          Based upon these findings of fact and a review of the evidence described herein, the

21  Court makes the following conclusions of law.   The Court, as a properly appointed U.S.

22  Magistrate Judge, is a judicial officer authorized to conduct extradition proceedings, pursuant

23  to 18 U.S.C. § 3184 and the Local Rules of Practice.  The court has jurisdiction over the fugitive

24  because he was in custody in the District of Arizona and has been brought before this Court as

25  the result of the Provisional Arrest Warrant issued in this action.  As the result of the personal

26  jurisdiction over Vitalijus Polikarpovas, the District Court of Arizona has jurisdiction to decide

27  whether Vitalijus Polikarpovas is extraditable.  *See, In re Pazienza*, 619 F.Supp. 611 (S.D.N.Y.

28

1985).  The Court has found that the applicable treaty is in full force and effect and the crime for which surrender was requested is covered by the treaty.  From a review of the documents submitted, it is clear there is a criminal charge pending in the requesting state.  There is competent legal evidence which supports the issuance of an arrest warrant for Vitalijus Polikarpovas for the crime alleged in the Complaint.  The evidence is sufficient to establish probable cause to believe that the crime was committed and that the person before the court, Vitalijus Polikarpovas, committed it.  *United States v. Barr*, 619 F.Supp. 1068, 1070 (E.D.Pa. 1985).  Based upon these findings of fact and conclusions of law, the Court finds that there is sufficient cause to determine Vitalijus Polikarpovas is extraditable for the arrest warrant issued by the court of the requesting country.  *Ornelas v. Ruiz*, 161 U.S. 502 (1896).  *Accord, Bingham v. Bradley*, 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913); *Zanazanian v. United States*, 729 F.2d 624 (9th Cir. 1980).

## CERTIFICATION OF EXTRADITABILITY

It is the Order of this Court that the Clerk shall transmit this Certification of Extraditability to:

U.S. Department of State
Office of Legal Advisor
Law Enforcement & Intelligence
Attention:  Winnie Fuentes
2201 C.  Street N.W., Room 5419
Washington, D.C. 80520

for the determination of whether Vitalijus Polikarpovas should be surrendered to the Republic of Lithuania.

Pursuant to the request of Vitalijus Polikarpovas, and for good cause shown, IT IS FURTHER ORDERED GRANTING Relator's Request for Provisional Order (Docket # 14). This Order certifying Extraditability shall not be officially transmitted to the Secretary of State until the expiration of two business days from the date of this Order.

. . .

. . .

1    ITS IS FURTHER ORDERED that the Relator's Request for a Status Conference

2  (Docket # 15) is DENIED as MOOT.

3    DATED this 18th day of May, 2006.

4

5

6    _____

7                David K. Duncan
             United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28